**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| YEIFER FRANCISCO LOBO-PALACIO,<br><br>Petitioner,<br><br>vs.<br><br>FACILITY ADMINISTRATOR, Hardin County Correctional Center, et al.,<br><br>Respondents. | No. C26-184-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## *I. INTRODUCTION*

This case is before me on petitioner Yeifer Francisco Lobo-Palacio's pro se petition (Doc. 1) for a writ of habeas corpus under 28 U.S.C. § 2241. In an initial review order (Doc. 2), I directed respondents (collectively, the Government)[1] to respond to the petition, which they have done (Doc. 7). Lobo-Palacio has provided a notice that he does not intend to reply (Doc. 11). Oral argument is not necessary. *See* LR 7(c).

## *II. BACKGROUND*

Lobo-Palacio is a Venezuelan national who entered the United States in September 2022 without inspection. Doc. 1 at 2. Immigration officers detained him soon after crossing the border. He was later temporarily paroled into the United States under Form I-94 until November 8, 2022. Doc. 10-2. Despite the expiration of his parole, Francisco-Lobo had remained free in the United States, seemingly with the consent of immigration authorities who issued him employment authorization and granted him

---

[1] The Government's response is filed only on behalf of the federal respondents and no state employees (Doc. 7 at 1 n.1). This order nonetheless applies to all respondents with equal force.

Temporary Protected Status (TPS) in 2024 and otherwise did not take steps to detain him. Doc. 1 at 6.

On May 17, 2026, in Winneshiek County, Iowa, Lobo-Palacio allegedly stole a $750 espresso machine from Walmart while acting as a driver for its delivery service. Doc. 10-6 at 2. Video purportedly shows Lobo-Palacio placing the machine in his cart, leaving the store with it without paying and placing it in the trunk of his vehicle. *Id.* Records show an espresso machine was not included in the customer's order. *Id.* Lobo-Palacio was arrested and accused of 4th degree theft under Iowa law. *Id.* at 8. The case remains pending. *See State v. Lobo-Palacio*, Winneshiek County Case No. SRCR022043.

When immigration officials learned of the arrest, they instituted an immigration detainer and began removal proceedings through a Notice to Appear (Form I-862). Docs. 10-3, 10-5. Lobo-Palacio is currently held in the Hardin County Jail in Eldora, Iowa, as his removal proceedings are pending. Doc. 1 at 6.

## *III. STANDARD OF REVIEW*

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). For relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful. *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025).

## *IV. ANALYSIS*

Lobo-Palacio argues that his detention without a custody determination by a neutral decisionmaker fails to comport with due process. Given his pending theft charge, a brief overview of two parts to the immigration detention scheme is necessary.

Aliens who are "applicant[s] for admission . . . seeking admission" (subject to some enumerated exceptions) are detained under the mandatory detention scheme of § 1225(b)(2). The statute therefore requires those aliens be detained pending resolution

of their § 1229a removal proceedings. Although still an open question in the Eighth Circuit, *see Aleksei M. v. Field Off. Dir., ICE*, No. 26-2113 (8th Cir. June 5, 2026), this court and other courts have found circumstances when due process considerations override the statutory mandate. *See, e.g.*, *Singh v. Mullin*, No. 26-cv-56, 2026 WL 1021846 (N.D. Iowa Apr. 15, 2026); *Kumar v. Johnson*, No. 26-cv-3503, 2026 WL 2603989 (W.D. Mo. Sept. 3, 2026); *Sandhu v. Mullin*, No. 26-cv-5009, 2026 WL 1146643 (D. Neb. Apr. 28, 2026).

Other aliens detained without a final removal order are subject to § 1226's detention scheme. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining [inadmissible or deportable] aliens pending their removal."). Its "default rule" provides an opportunity for bond, *id.* (citing § 1226(a)); *see also* 8 C.F.R. § 1003.19 (2026), but Congress included categories of aliens who are subject to mandatory detention. One such category are those aliens "charged with, . . . arrested for, . . . convicted of, admits having committed, or admits committing acts which constitute the essential elements of" a theft offense under state law. *See* § 1226(c)(1)(E), (c)(2). Given Congress' legislative findings as it relates to the groups mandatorily detained under § 1226(c), an alien's indiscriminate detention pending a final ruling on their removal proceedings does not violate due process. *See generally Demore v. Kim*, 538 U.S. 510 (2003); *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). Importantly, "subsections (a) and (c) [do not] establish[] separate sources of arrest and release authority"; rather, "subsection (c) is simply a limit on the authority conferred by subsection (a)." *Nielson v. Preap*, 586 U.S. 392, 409 (2019).

Relevant here is the interplay between § 1225(b)(2) and § 1226. Historically, the Government treated those present in the United States interior as detained under § 1226. However, recent policy changes have questioned that prevailing understanding. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026). Based on the statutory definition of "applicants for admission" that makes no such geographic limitation, 8 U.S.C. § 1225(a)(1), the Government has treated all unadmitted aliens as

"applicants for admission . . . seeking admission," thus subject to the mandatory detention provisions of § 1225(b)(2). The Eighth Circuit has adopted the Government's view, meaning that in this circuit, unadmitted aliens must be mandatorily detained under § 1225(b)(2). *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

Lobo-Palacio seemingly argues that his detention is governed under § 1226(a). The Government points to Lobo-Palacio's pending theft charge to argue that he falls within § 1226(c). Both are wrong. To start with Lobo-Palacio's position, as an unadmitted alien, *Avila* plainly forecloses him from being eligible for bond under § 1226(a)'s discretionary detention scheme. For similar reasons, the Government's § 1226(c) argument cannot be right. Section 1226(c) is not a "separate source of arrest and release authority" but "simply a limit on the authority conferred by subsection (a)." *Nielson*, 586 U.S. at 409. To be detained under § 1226(c) then, Lobo-Palacio would have to meet the detention requirements of § 1226. Not only is this possibility antithetical to the Government's recent shift, but *Avila* dictates against it. As such, despite a pending theft charge, Lobo-Palacio must be detained under § 1225(b)(2). Consequently, contrary to the Government's argument, his due process challenge is not foreclosed by precedent.

Continuing then, Lobo-Palacio was granted discretionary parole in 2022 and had remained free in the United States despite its expiration. *See* 8 U.S.C. § 1182(d)(5). To have been granted parole, the Secretary of Homeland Security must have individually determined that he "presented neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5 (2026). That decision conferred a heightened liberty interest onto Lobo-Palacio that his release would "be revoked only if he fails to live up to the [conditions of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (due process clause applies "even when the liberty itself is a . . . creation of the State"). Based on this heightened liberty interest, I have ordered that those who are similarly situated receive a bond determination hearing. *See, e.g.*, *Rodriguez Martinez v. ICE*, No. 26-cv-4054, 2026 WL 2389188, at *2 (N.D. Iowa Aug. 17, 2026).

Given his pending state charge, Lobo-Palacio may have failed to comply with his parole conditions. However, that is for the Government to prove. *See, e.g.*, *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 944 (D. Colo. 2025) ("As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake."). At minimum, I find that Lobo-Palacio is entitled to a bond determination hearing for the Government to prove that he either violated the conditions of his release or that his continued civil detention is otherwise justified. As such, I will grant his petition and order such a hearing.

## ***V. CONCLUSION***

For the reasons set forth herein:

1. Petitioner Yeifer Francisco Lobo-Palacio's pro se petition (Doc. 1) for a writ of habeas corpus is **granted**.

2. Respondents are **ordered** to provide Lobo-Palacio with a hearing within **14 days** of this order, at which it will have the burden of proving by clear and convincing evidence that he either violated the conditions of his release or that his continued civil detention is otherwise justified. If respondents do not provide the ordered hearing within 14 days, then Lobo-Palacio must be released from detention under the same conditions he was under immediately before his immigration detention.

3. The requirement that Lobo-Palacio receive a bond hearing within 14 days is conditioned on his removal order not becoming administratively final before then. If the removal order becomes administratively final before the 14-day period, or if his detention otherwise becomes controlled by 8 U.S.C. § 1231, respondent will no longer be required to provide such a hearing.

**IT IS SO ORDERED** this 1st day of October, 2026.

Leonard T. Strand
United States District Judge